UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

PANDORA S. PIERCE,

        Plaintiff,

    v.

ATRIUM TRS V, LLC; TUCSON PORTLAND, LLC; and ATRIUM HOSPITALITY, LP,

        Defendants.

Case No. 3:17-cv-00862-YY

OPINION AND ORDER

YOU, Magistrate Judge:

Plaintiff Pandora Pierce ("Pierce") alleges a single claim of negligence against defendants Atrium TRS V, LLC, Tucson Portland, LLC, and Atrium Hospitality, LP (collectively "defendants") for injuries sustained from tripping over a walkway curb in a hotel atrium on December 31, 2015. This court has diversity jurisdiction over this case pursuant to 28 USC § 1332.[1] Defendants have moved for summary judgment. ECF #16. For the reasons discussed below, the motion (ECF #16) is GRANTED.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP

---

[1] All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c).

56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "When judging the evidence at the summary judgment stage, the district court is not to make credibility determinations or weigh conflicting evidence, and is required to draw all inferences in a light most favorable to the nonmoving party." *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986) ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Id*. at 252, 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## BACKGROUND

Pierce arrived at the Embassy Suites by Hilton–Portland Airport late afternoon on December 30, 2015, where she checked into her hotel room and helped decorate a ballroom in preparation for the Leisure Hour Junior Golf Program's New Year's Eve party. Dep. of Pandora Pierce 15 ("Pierce Dep."), ECF #17-1. Defendants stipulate that Pierce was a business invitee. Mot. Summ. J. at 5. Pierce had attended the same event five other times and helped put it on at least twice. Pierce Dep. 15-16; Decl. of Pandora Pierce ¶¶ 1-3 ("Pierce Decl."), ECF #20. Between 400 and 500 guests were expected to attend the event. Pierce Decl. ¶ 5. Pierce had been in the atrium probably 10 to 30 times before, and had never fallen or seen anyone fall. Pierce Dep. at 23.

On December 31, 2015, Pierce navigated the atrium to eat breakfast and attend a morning meeting, and then again later to attend a happy hour. Pierce Dep. at 24-25. That evening, Pierce helped work the event's registration desk in front of the ballroom. *Id.* at 28. She was wearing 2″–3″ pumps. *Id.* at 27, 45. At 8:00 pm, the ballroom doors opened and the party began. *Id.* at 29. Fifteen-to-thirty minutes later, Pierce headed back to her room to retrieve something for another guest. *Id.* On her way to the elevators, she stopped on a walkway in the atrium and spoke to a co-worker who was walking in the opposite direction, toward the ballroom. *Id.* at 30, 43. After speaking with the co-worker, Pierce attempted to step to the side to allow her co-worker to pass but tripped and fell into the adjacent landscaping, injuring her shoulder. *Id.* at 43-45.

The tile walkway is cream colored. *See* Decl. of John Pinzelik ("Pinzelik Decl."), Exs. 5, 6, ECF #19-1. Some segments of the walkway are flush with carpet and open into seating areas. *Id.* Other segments are lined with a 4 1/4″ high dark-green tile curb that separates the walkway from elaborate landscaping of plants, dirt, and rocks. *Id.*; Pierce Dep. at 39. Some segments of the walkway are lined with a guardrail above the curb, to separate the walkway from waterfalls or a stream running underneath the walkway. *See* Pinzelik Decl., Ex. 6. Further, some segments of the walkway curve to the left or right and either narrow or expand. *Id.*

When Pierce fell, she was standing next to a segment of the walkway that narrowed from 78″ to 58″ and curved to the right, and where there was curbing but no guardrail. Decl. of Tom Baird ("Baird decl."), Exs. 6, 10, ECF #21-1.[2] She did not fall into a water feature, but into plants, dirt, and rocks that were from 5″ to 7″ inches below the walkway. Pierce Dep. at 41-46;

---

[2] While, as discussed below, Baird's expert opinion testimony is inadmissible, defendants do not dispute the authenticity of the pictures and measurements he took. Defendants' Reply 7 ("Reply"), ECF #23.

3 – OPINION AND ORDER

Decl. of Stephen Brown ("Brown Decl."), Exs. 2–4, ECF ##24-2–24-4 (depicting the landscaping as 9″ to 11″ below the 4 1/4″ curb).

When questioned about the incident, Pierce claimed the walkway was crowded but could not recall if she bumped into anyone. Pierce Dep. at 45-46. She also admits there were no issues with the lighting. *Id.* at 41.

## DISCUSSION

Defendants contend they are entitled to summary judgment because the walkway, curb, and landscaping that Pierce tripped over and fell into did not pose an unreasonable risk of harm as a matter of law. Considering all the circumstances of Pierce's fall, no reasonable jury could find the premises posed an unreasonable risk of harm.

### I. Admissibility of Expert Opinion Testimony

The court must ensure all expert testimony is relevant and reliable. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148-52 (1999) (discussing the special obligation imposed by FRE 702 on the trial court); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-91 (1993). FRE 702 requires that "expert testimony relate to scientific, technical, or other specialized knowledge, which does not include unsupported speculation and subjective beliefs." *Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001). The expert's opinion must also be "based on sufficient facts or data," be "the product of reliable principles and methods," and show that the "expert has reliably applied the principles and methods to the facts of the case." FRE 702(b)-(d). "An expert's bald assurance of validity is not enough. *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995).

Here, Pierce relies on the expert opinion testimony of Tom Baird ("Baird"). Baird is a Safety Investigator/Consultant[3] with over 45 years of experience dealing with construction-safety issues. Baird Decl. 1, 26. He has investigated and consulted in over 1,440 injuries since 1994. *Id.* His 37-page curriculum vitae chronicles his education, training, and experience. *Id.* at 26-62.

Baird inspected the site and surrounding area where Pierce tripped and fell, taking pictures and measurements. *Id.* at 3. He also reviewed the complaint, defendants' answer, Pierce's deposition transcript, and defendants' motion for summary judgment. *Id.* at 2. Baird does not say whether he spoke to Pierce.

Baird's testimony includes four opinions. *Id.* at 3. Defendants object to the admissibility of all four opinions, arguing that they are conclusory and lack an adequate factual basis. Reply at 2-6. This court agrees. In each opinion, Baird merely integrates legal conclusions into the complaint's allegations.[4] Whether the opinions are "the product of reliable principles and

---

[3] Baird is a Certified Legal Investigator, Certified Forensic Consultant, Certified Safety Manager, Certified Floor Safety Technician, Certified Walkway Safety Auditor, and Certified XL Tribometrist. Baird Decl. 1, 26.

[4] Baird's opinions are set forth below. In each of his opinions, Baird repeats the following language: "narrow, bridged walkway with the low profile curb, without an adjacent guardrail to guard against pedestrians falling into the atrium water feature that included water, foliage, dirt, and rocks." Baird Decl. 3. For brevity's sake, this phrase is referred to as "walkway":
    First Opinion:
        The [walkway] was an unreasonably hazardous and dangerous condition and as such presented an unreasonable and foreseeable risk of injury to Ms. Pierce as she stepped to the side to allow Ms. Charley George to pass by her on the crowded walkway.
    Second Opinion:
        The unreasonably hazardous and dangerous condition of the [walkway] was such that the owners and managers of the Embassy Suites hotel should have discovered the condition through reasonable care, and should have realized, not only was it a danger to their guests but that the danger to their guests would not be

methods," and whether he "has reliably applied the principles and methods to the facts of the case" is unknown because he has not identified any principles or methods at all in violation of FRE 702 (b)-(d). *Daubert,* 43 F.3d at 1316 ("Rather, the party presenting the expert must show that the expert's findings are based on sound science, and this will require some objective, independent validation of the expert's methodology.").

Indeed, in a subsequent section of Baird's testimony entitled "Basis of Opinions," Baird offers additional speculations and legal conclusions not based on any data or methods and principles. Without referencing any accepted industry standards or even the applicable building code for the placement of handrails and guardrails, Baird repeatedly speculates that "[a]ll of the walkways adjacent to the water feature should have guardrails for the safety of the hotel guests." Baird Decl. at 4; *id.* ("A guardrail should have been placed at the location and that would have prevented this incident"). At one point, he evens says: "It is simple hazard analysis. A guardrail should have been placed at the location of the incident. Placing a guardrail there would have eliminated the unreasonably hazardous and dangerous condition." *Id.* However, Baird fails to do an analysis, or—if he has performed one—show the court what he did and what he relied on to reach his conclusion.[5]

---

        realized by them and they would not be able to protect themselves
        from the hazardous and dangerous condition.
Third Opinion:
        No warnings of the unreasonably hazardous and dangerous
        condition of the [walkway] were given to Ms. Pierce.
Fourth Opinion:
        The unsafe hazardous and dangerous condition of the [walkway],
        should have been eliminated prior to the incident.
*Id.*

[5] Notably, the applicable building code only requires the installation of a guardrail when the floor surface is located more than 30 inches above the floor or grade below. Portland City Code

Then, without referencing the testimony of any fact witness, Baird speculates:

> Upon reaching the bridged walkway [sic] the walkway narrows to only 58″. Ms. Pierce's *perception* upon stepping aside to let Ms. George pass *would be* that the walkway *would be* the same width as it was until that point in the walkway, that being 78″ wide. Instead, the walkway narrows for no apparent reason or purpose.
>
> It is reasonable to *presume* that the walkway would be the same width. It should be the same width for safety. Not having it the same width *may* confuse guests and cause them to step off the walkway and fall into the adjacent water feature that includes water, foliage, dirt, and rocks.
>
> The narrow, bridged walkway had a low profile 4″ curb on the side. The curb is a trip hazard when the walkway is crowded with people as was the case at the time of the incident. It is *foreseeable* that a person would step aside to let people by at that location. It is *foreseeable* that *if* they did so they *might* trip over the low profile curb. It is *foreseeable* that without the presence of a guardrail at that location they would fall into the water feature that includes water, foliage, dirt, and rocks and in doing so would suffer serious injury.

Baird Decl. at 4. (emphasis added).

These conclusory statements and speculations add no new factual information and cannot create a genuine issue of material fact to survive summary judgment. "[T]he mere fact that an invitee was injured on the premises does not, by itself, give rise to an inference of negligence." *Hagler v. Coastal Farm Holdings, Inc.*, 354 Or. 132, 141 (2013). Baird's unsupported speculations and subjective beliefs do not satisfy the requirements of FRE 702 (b), (c), and (d). His expert opinions are therefore inadmissible.

## II.     Premises Liability in Oregon

Under the *Erie* doctrine, a federal court sitting in diversity must apply the substantive law of the state in which it sits. *Harmsen v. Smith*, 693 F.2d 932, 946 (9th Cir. 1982); *Manalis Fin.*

---

§ 29.30.080(C) (effective May 10, 2002). Here, it is uncontested that the distance between the floor surface and the grade below where Pierce fell was no more than 11." Brown Decl., Exs. 2–4.

*Co. v. United States*, 611 F.2d 1270, 1272-73 (9th Cir. 1980). To prevail on a negligence theory in Oregon, the plaintiff must show:

> (1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent.

*Son v. Ashland Cmty. Healthcare Servs.*, 239 Or. App. 495, 506 (2010); *see also Chapman v. Mayfield*, 358 Or. 196, 205 (2015).

In Oregon, "property owners and occupiers of business premises are 'liable to invitees only for conditions that create an unreasonable risk of harm to the invitee.'" *Andrews v. R.W. Hays Co.*, 166 Or. App. 494, 503 (2000) (quoting *Jensen v. Kacy's Markets, Inc.*, 91 Or. App. 285, 288, *rev. den.* 306 Or. 413 (1988)). Owners and occupiers must make the premises reasonably safe for the invitee's visit. *Woolston v. Wells*, 297 Or. 548, 557-58 (1984). They "must exercise that standard of care either to eliminate the condition creating that risk or to warn any foreseeable invitee of the risk so as to enable the invitee to avoid the harm." *Id.* at 559; *Maas v. Willer*, 203 Or. App. 124, 129 (2005). What actions owners and occupiers must take to protect an invitee from an unreasonable risk of harm depends on the circumstances, including the nature of the risk, the owner or occupier's knowledge, and the arrangement or use of the premises. *Ault v. Del Var Props., LLC*, 281 Or. App. 840, 847 (2016), *rev. den.*, 361 Or. 311 (2017). "[C]ollateral conditions *combining with* steps—poor lighting, slipperiness, past accidents—may present circumstances that a reasonable jury could find 'unreasonably dangerous.'" *Glorioso v. Ness*, 191 Or. App. 637, 644 (2004) (emphasis in original).

The presence of an unreasonably dangerous condition, i.e., a condition that cannot be encountered with reasonable safety even if the danger is known and appreciated, subjects an

owner or occupier to a heightened standard of care. *Ault*, 281 Or. App. at 850; *see also Johnson v. Short*, 213 Or. App. 255, 258, (2007) (finding genuine issues of material fact as to whether slippery steps covered by wet moss and algae created unreasonably dangerous condition). A condition is not unreasonably dangerous if the hazard arising from it would have been known and understood by reasonable persons expected to encounter the condition. *Maas*, 203 Or. App. at 127. An invitee must also exercise that same standard of care in avoiding harm from a condition of the premises of which the invitee knows, or, in the exercise of care, of which the invitee should know. *Id.* at 129. While the presence of an unreasonably dangerous condition may be evidence of an unreasonable risk of harm, the existence of an unreasonable risk of harm is not contingent on the presence of an unreasonably dangerous condition. *Ault*, 281 Or. App. at 850.

### III. Analysis

#### A. Unreasonably Dangerous Condition

Pierce contends that "[d]efendants' activity of allowing numerous people to stand and remain on the pathway combined with the latent danger of a drop off without a guardrail created an unreasonably dangerous condition." Pl.'s Resp. 7-8 ("Resp."), ECF #18. She relies on *Vandeveere-Pratt v. Portland Habilitation Center, Inc.*, where the defendant's activity of mopping a floor made the floor "very slippery and wet," turning an otherwise ordinary floor into an unreasonably dangerous slip hazard. 242 Or. App. 554, 560-61 (2011) (noting the floor became "almost as slippery as ice"). She argues that the situation here is analogous: just like the activity of mopping the floor made it slippery, allowing people to stand and remain on the walkway made it crowded, thereby creating an unreasonably dangerous condition. Resp. at 8.

However, allowing invitees to use an ordinary walkway as walkways are intended to be used is not the type of activity that can give rise to premises liability. Defendants did not change the physical condition of the walkway, for example, by running an extension cord over it, by dimming the lights, or, as in *Vandeveere-Pratt*, by mopping the floor to make the surface slippery. 242 Or. App. at 560-61; *see also Hinchman v. UC Mkt., LLC*, 270 Or. App. 561, 567 (2015) ("hazardously selected and positioned floor mat"); *Hagler*, 354 Or. at 144-45 ("hazardously shelved merchandise"). Unlike mopping a floor, allowing invitees to stop and talk to each other does not make an ordinary condition unreasonably dangerous.

Pierce goes as far as to argue that the contrast of color between the dark-green curb and the cream walkway—the primary physical attributes of the walkway—is irrelevant because she was not walking when she fell but merely stepped to the side to make way for someone else to pass. Resp. at 7. This argument exposes the flaw in her line of reasoning. If followed to its logical conclusion, this would mean that any time people cross paths—regardless of the physical condition of the premises—the premises are transformed into a dangerous condition that cannot be encountered with reasonable safety even if known and appreciated. Such an exception would swallow the rule.

For these reasons, the walkway, curb, and adjacent landscaping were not an unreasonably dangerous condition as a matter of law.

### B.     Unreasonable Risk of Harm

Pierce argues that even if the walkway, curb, and adjacent landscaping did not pose an unreasonably dangerous condition, they presented an unreasonable risk of harm. Resp. at 8-10. However, under Oregon law, ordinary conditions found in ordinary places do not pose an unreasonable risk of harm as a matter of law.

The Oregon Court of Appeals affirmed summary judgment for property owners in two instructive cases. In *Andrews v. R.W. Hays Co.*, the plaintiff tripped outside a store over a 1.5″ to 2″ step-down on a walkway to a parking lot. 166 Or. App. 494, 505 (2000). The area had a deceptively level appearance due to the similarity of color between the gray cement walkway and the black asphalt parking lot, but nothing more. Noting that the lighting was adequate, the surface was dry, and there were no prior accidents, the court held there was no unreasonably dangerous condition and no concomitant duty to warn as a matter of law. *Id.* Similarly, in *Glorioso v. Ness,* a wedding photographer fell on a 5″ to 6″ step on a deck where the decking both above and below the step was made of the same material and had the same color and appearance. 191 Or. App. 637, 639 (2004). The deck was not slippery, the lighting was immaterial, and the plaintiff's visibility was not obstructed despite wedding decorations. *Id.* Before her fall, the plaintiff noticed that the deck had two levels. *Id.* The *Glorioso* court stated:

> A step located in a place where steps normally may be found, or with indications in the surrounding area that steps are present, with a surface of the same appearance both above and below, with no deceptive lighting, not covered with slippery substances, and with no established history of causing injury, does not pose an unreasonable risk of harm giving rise to a concomitant duty to warn. The deck here was not slippery; it was not in an unexpected location; the lighting was adequate; there is no admissible evidence showing falls had happened before.

191 Or. App. at 645.

Here, Pierce admits she has navigated the atrium's walkways between 10 and 30 times under similar circumstances, i.e., prior New Year's Eve parties with hundreds of people. Pierce Dep. at 15-16, 23; Pierce Decl. ¶¶ 4-5. There were no problems with the lighting in the atrium or with the slickness of the walkway. *See* Pierce Dep. at 41. The cream-colored walkway sharply contrasts with the raised, dark-green colored curb. The curb is a consistent height and color throughout the atrium, and it is not unusual or in an unexpected location—it is used to create a

border with adjacent landscaping. The curb is in plain view, and Pierce was not expected to cross it to reach her destination. There is no evidence anyone else fell on the walkway that night or that falls have happened in the atrium at all. For these reasons, the walkway did not present an unreasonable risk of harm as a matter of law.

This case is distinguishable from premises-liability cases were Oregon courts have found triable issues of material fact precluded the grant of summary judgment. In *Ault v. Del Var Properties, LLC*, for example, an "uneven pavement edge was in a location where it would not be expected—indeed, [] the pavement edge was *even* at other points, making the uneven edge all the more unexpected." 281 Or. App. 840, 853 (2016), *rev. den.*, 361 Or. 311 (2017) (emphasis in original). Here, there was no deceptively level appearance: the cream-colored walkway sharply contrasts with the dark-green colored curb, the curb is a consistent height throughout the atrium, and the curb is not in an unexpected location: it lines the walkway and separates it from adjacent landscaping. *See* Pinzelik Decl., Exs. 5, 6.

Further, the plaintiff in *Ault* testified she was distracted by the layout of a nearby storefront. 281 Or. App. at 843-44. Here, while there were surely distractions due to the elaborate landscaping and the night's festivities, Pierce does not testify that she fell because she was distracted. *See* Pierce Dep. at 39-47. She argues in her Response that she "could easily see the waterfall below the elevators, the elevators cars going up and down, and the myriad of activity taking place on New Year's Eve. Given the sudden change in the width of the walkway and other distractions, defendants should have anticipated that the area where Plaintiff stopped presented an unreasonable risk of harm . . . ." Resp. at 9. However, aside from Baird's inadmissible opinions about what Pierce's perceptions "would be" (Baird Decl. at 4), Pierce offers no evidence that she fell because of any distractions. "The non-moving party must do

more than show there is some 'metaphysical doubt' as to the material facts at issue. In fact, the non-moving party *must come forth with evidence* from which a jury could reasonably render a verdict in the non-moving party's favor." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (emphasis added).

Pierce relies on *Mickel v. Haines Enterprises, Inc.*, 240 Or. 369 (1965), a pre-*Fazzolari* case, for the proposition that an owner or occupier should anticipate an unreasonable risk of harm to an invitee notwithstanding her knowledge, warning, or the obvious nature of the condition, where there is reason to expect the invitee's attention will be distracted. Resp. at 9. This reliance is misplaced for two reasons. First, *Mickel* is a case about contributory negligence. There, the Oregon Supreme Court reasoned that if something had caused a plaintiff to not pay attention to a known danger, then generally a jury should judge the adequacy and reasonableness of the cause to determine whether the lapse in attention should be excused. *Id.* at 374. For example, the approach of a rabid dog or a violent person, or the sounding of a fire alarm might excuse a plaintiff's otherwise negligent conduct. *Id.* at 374-75.

Second, to the extent *Mickel* says anything about the nature of a dangerous condition, it demonstrates the lack of danger present in this case. There, a 5 1/4″-high door sill separated a bathroom from the rest of the hotel room. *Id.* at 370-71. The sill was hidden from view upon entering the room and it was nearly the same color as the adjacent flooring. *Id.* The court opined that the unexpected and unusual location of the sill created a danger, and the bad visibility and similar coloring enhanced the danger. *Id.* However, the plaintiff noticed the sill and crossed it safely four times within the previous day before tripping and sustaining injuries. *Id.* While the court held that the cause for the lapse in attention is generally a jury question, there, it found the plaintiff was contributorily negligent as a matter of law. *Id.* at 377.

Here, as discussed above, the walkway, curb, and landscaping were not in an unexpected or unusual location. Thus, they did not pose an unreasonable risk of harm as a matter of law. While owners and occupiers of business premises have a duty to maintain their premises in a reasonably safe condition, their role "is not that of an insurer against accidents upon the premises even as to persons whom they have invited to enter." *Hagler*, 354 Or. at 141 (internal citation omitted).

## CONCLUSION

No reasonable jury could find that the walkway and curb at issue in this case constituted an unreasonably dangerous condition or presented an unreasonable risk of harm. Therefore, defendant's motion for summary judgment (ECF #16) is GRANTED.

## ORDER

Defendants' motion for summary judgment (ECF #16) is GRANTED, this case is dismissed, and judgment will be entered to that effect.

DATED June 13, 2018.

/s/Youlee Yim You
Youlee Yim You
United States Magistrate Judge